UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 2 9 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

TRENT M. COBURN,           )
                           )
    Plaintiff,             )
                           )
v.                         ) Civil Case No. 09-1266 (RJL)
                           )
JOHN MCHUGH,[1]            )
                           )
    Defendant.             )

## MEMORANDUM OPINION
(September 2⁸, 2010) [#6, #8]

Plaintiff Trent M. Coburn ("Coburn"), a former active member of the U.S. Army, brings this lawsuit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging two decisions of the Army Board for Correction of Military Records ("ABCMR") upholding his involuntary discharge under the Qualitative Management Program ("QMP"). Currently pending before the Court are defendant's Motion to Dismiss or in the Alternative, for Summary Judgment and plaintiff's Cross-Motion for Summary Judgment. Upon review of the pleadings, the entire record, and the applicable law, defendant's motion is GRANTED, and plaintiff's cross-motion is DENIED.

### BACKGROUND

Coburn enlisted in the Army on November 6, 1984. AR 311. On December 7, 1999, during routine screening, he tested positive for marijuana. AR 136-40. On March

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes the name of the current Secretary of the Army for the former secretary, Pete Geren.

1

24, 2000, at a nonjudicial punishment hearing pursuant to Article 15 of the Uniform Code of Military Justice, Coburn was found guilty of wrongful use of marijuana. AR 274. Plaintiff elected not to appeal the Article 15 findings or his punishment of a fine and extra duty. *Id.*

On August 25, 2000, Coburn received an unfavorable annual Noncommissioned Officer Evaluation Report ("NCOER") for the rating period from August 1999 through July 2000. AR 275-76. The NCOER referenced his positive marijuana test but also noted that he "uses poor judgment," that his "leadership [is] marred by actions unbecoming a noncommissioned officer," that he "fails to follow all regulations," and that his "personal conduct is prejudicial to good order and discipline to the unit." *Id.* On October 25-26, 2000, plaintiff appeared before an administrative separation board to determine whether he should be separated for misconduct. *See* AR 89. The board recommended that Coburn be retained in the service. AR 88. Coburn then petitioned both the brigade commander and the commanding general to set aside the Article 15 finding, but both requests were denied. AR 89-96.

The Army's QMP is governed by Army Regulation 635-200, Chapter 19. Noncommissioned officers "whose performance, conduct, and/or potential for advancement do not meet Army standards, as determined by the approved recommendations of [the Army] centralized selection boards responsible for QMP screening, will be denied continued service." Army Reg. 635-200 ¶ 19-2. On April 20, 2001, pursuant to the QMP, plaintiff was selected for separation from service and barred from reenlistment. AR 97-98. The grounds for his separation were his unfavorable

2

NCOER and his Article 15 record of misconduct. AR 99. After being notified of his selection under the QMP, Coburn petitioned to have his Article 15 record transferred to the restricted portion of his official records and to have the unfavorable sections of the NCOER blacked out or the entire NCOER removed from his records. AR 134, 291. His requests were denied. AR 133, 287.

On August 24, 2001, Coburn petitioned the ABCMR, again requesting that his Article 15 findings be set aside or transferred into the restricted portion of his personnel file and that unfavorable NCOER be set aside or redacted. AR 80. On March 28, 2002, the ABCMR unanimously denied the application. AR 72-79. The ABCMR found that plaintiff had presented no evidence that his Article 15 record of nonjudicial punishment was erroneous or unjust, and that no compelling evidence existed to remove it from his file or to transfer it to his restricted fiche. AR 78. Furthermore, the ABCMR found that Coburn had presented no evidence that his NCOER was improper, and that no basis existed to remove it or to amend its contents. *Id.*

A few months previously, on or about January 23, 2002, plaintiff had asked Dr. Mario Caycedo ("Caycedo") to review plaintiff's medical records for the possibility of initiating a Medical Evaluation Board ("MEB") because of his back problems. Caycedo Decl., Sept. 3, 2009, Def.'s Ex. A, ¶ 2(b). In March 2002, Caycedo initiated an MEB. *Id.* ¶ 2(c). Caycedo later learned that the initial MEB paperwork had been misplaced and reinitiated the MEB on June 27, 2002. *Id.* ¶ 2(g). On July 28, 2002, after Coburn had met with various doctors, Caycedo reviewed Coburn's case and his medical condition and concluded that the MEB could be terminated. Caycedo Decl. ¶ 2(i). Caycedo

discussed this conclusion with the MEB approval authority, Dr. Wayne Scirner. *Id.* Scirner decided not to terminate the MEB at that time, stating that he first wanted the pulmonary clinic to conduct an additional assessment of Coburn. *Id.*

On October 30, 2002, Caycedo returned to the clinic from an absence of several weeks due to military duties. *Id.* ¶ 2(l). He discovered that, per Scirner's directive, plaintiff had been evaluated at the pulmonary clinic in July, which found no new medical issues. *Id.* Caycedo informed Scirner of this assessment, and they agreed to terminate the MEB. *Id.* ¶ 2(m). Scirner and Caycedo based their decision on the following factors: (1) plaintiff had declined surgery; therefore, they concluded that plaintiff was not experiencing continuing debilitating pain; (2) in his several previous visits to the clinic, plaintiff did not appear to be in great discomfort and was able to perform his assigned duties; (3) both the rheumatology and the pulmonary clinic physicians had examined plaintiff and determined that he required no physical limitations; and (4) plaintiff had raised no new medical complaints over the previous six months. *Id.* ¶ 2(n). The MEB was terminated, and Coburn was discharged that same day, October 30, 2002, because of his selection, over eighteen months earlier, under QMP. AR 299-300, 312.

After being discharged, Coburn petitioned the ABCMR on two occasions. On December 5, 2002, plaintiff applied to the ABCMR claiming that his discharge was in error or unjust because of improper termination of the MEB. AR 59. He requested reinstatement to active duty to allow the MEB to proceed. AR 60. On August 21, 2003, the ABCMR unanimously denied plaintiff's application. AR 33-39. On January 5, 2006, plaintiff requested reconsideration of the ABCMR's opinion, challenging the validity of

4

the discharge on the same grounds that he had in his previous application: (1) that the physician who terminated the MEB had no authority to do so and (2) that no medical justification existed to terminate the MEB. AR 14. Plaintiff provided as new evidence a Department of Veterans' Affairs ("VA") rating decision dated June 22, 2004, that gave him a combined disability rating of 50 percent. *See* AR 5, 12, 15. On March 7, 2007, the ABCMR unanimously denied his reconsideration request. AR 1-7.

On July 7, 2009, Coburn brought this action, seeking review of the ABCMR's decisions in 2003 and 2007. He filed an amended complaint on September 3, 2009, seeking declaratory judgment that the Army unlawfully separated him for marijuana use, that the Army unlawfully terminated his disability evaluation, that Army regulations prohibited his separation, and that the ABCMR's decision-making process did not comply with statutory authority or Army regulations. The parties then filed the currently pending cross-motions.

## ANALYSIS

### I. Standards of Review

Defendant moves to dismiss under Rule 12(b)(6).[2] To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also*

---

[2] Although defendant initially also moved to dismiss under Rule 12(b)(1), he now concedes that this Court does have subject matter jurisdiction. *See* Def.'s Reply 2 [#15].

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (stating that if a court has determined that a plaintiff has asserted "well-pleaded factual allegations," the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). When a Court is resolving a motion to dismiss, "the complaint is construed liberally in the plaintiff['s] favor," and the plaintiff is granted "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

The parties have also filed cross-motions for summary judgment. Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotations omitted).

Under the APA, the Court will overturn an agency decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if the agency has failed to follow procedure as required by law or has entirely failed to consider an important aspect

of the problem. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In reviewing an agency's action under the APA, the Court is limited to the administrative record, except in cases with a strong showing of bad faith or improper behavior or a record so bare that it prevents effective judicial review. *Commercial Drapery v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) (internal citation omitted). The Court will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made. *See State Farm*, 463 U.S. at 43. The explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge," and a reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (internal quotations omitted).

Furthermore, when reviewing a decision by a military correction board, a Court must do so under an "unusually deferential application of the 'arbitrary and capricious' standard of the APA." *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002). Only the most egregious agency decisions do not satisfy this very deferential standard of review. *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989). A court need only find that the Correction Board's decision "minimally contain[s] a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotations omitted). Unfortunately for Coburn, both decisions do here.

## II. Marijuana Use

In his first claim, plaintiff asserts that the Army unlawfully separated him in 2002 for marijuana use after he was cleared of that charge by the administrative separation board that met in 2000. This claim, however, was never presented to the ABCMR in the decisions that Coburn is appealing here and must, therefore, be dismissed. How so?

As stated above, Coburn brought this suit seeking review of two ABCMR decisions, one in 2003 and one in 2007. *See* Am. Compl. ("Compl.") ¶ 14. In neither of his applications that led to those ABCMR decisions did plaintiff object to the circumstances or basis of the QMP. Instead, both applications focused on what Coburn described as the improper termination of his MEB. *See* AR 14 (listing as bases for reconsideration "1. The doctor who terminated the MEB had no authority to do so; and 2. There was no medical justification to terminate the MEB" in his January 5, 2006 application), 59 (stating in his December 5, 2002 request that "Dr. (CPT) Mario Caycedo improperly terminated my MEB without consulting me, a violation of my patient rights"). Coburn raised no issue in either now-appealed ABCMR application about the Army's purported unlawful separation for marijuana use.[3] Thus, the ABCMR did not consider in either its 2003 or 2007 decisions whether his selection for separation by the QMP was improper in light of the administration separation board's decision in 2000 not to separate plaintiff from service based on his Article 15 for marijuana use. *See* AR 5-6, 34-39.

---

[3] Plaintiff did petition the ABCMR to remove records concerning his marijuana use on August 24, 2001. *See* AR 80. The ABCMR denied relief on March 28, 2002, *see* AR 72-79, and plaintiff did not request reconsideration of that decision. Any challenge to the ABCMR's 2002 decision is now barred by the six-year statute of limitations. 28 U.S.C. § 2401(a).

8

This case is brought pursuant to APA review, and APA review is limited to the record created before the agency. *See Commercial Drapery*, 133 F.3d at 7. In other words, plaintiff cannot raise claims here that he failed to raise before the ABCMR. There is no final agency action in either 2003 or 2007 for this Court to review with respect to plaintiff's claim of unlawful separation for marijuana use following the administrative separation board's decision not to separate him. Therefore, Coburn's first claim must be dismissed.

### III. Termination of the MEB and Separation from Service

As to the remaining claims, Coburn argues that the "unusually deferential" standard of review does not apply because the Army's regulations were so explicit with respect to his claims that the ABCMR had no discretion to deny them. *See* Pl.'s Mot. 7-11. The defendant responds that the Army followed all applicable regulations in handling plaintiff's applications and, therefore, the ABCMR had the discretion to deny his claims. I agree with the defendant.

#### A. The MEB

Coburn complains that the MEB was improperly terminated because (1) his physical condition justified the MEB and (2) the doctor who terminated the MEB lacked the authority to do so. For support, plaintiff cites Army Regulation 635-40 ¶¶ 4-10 and 4-19, which outline the processing of a case from an MEB to a physical evaluation board. What plaintiff fails to recognize, however, is the decision to refer a soldier to an MEB in the first place begins with the examining physician's evaluation. *See* Army Reg. 635-40 ¶ 4-9. When a physician evaluates a soldier and determines that he appears to be "not

medically qualified to perform duty," the physician, with the approval of the commander of the military treatment facility, will refer the soldier to an MEB. *Id.* To assist physicians in determining whether a soldier should be referred to an MEB, the Army has a list of medical conditions in Army Regulation 40-501, Chapter 3. That regulation provides that if an examining physician determines that a soldier possesses one of the medical conditions listed in that chapter, the physician should initiate an MEB. Army Reg. 40-501 ¶ 3-3(d). For a soldier whose non-disability separation date occurs during the course of disability evaluation, he may, with his consent, "be retained in the service until . . . completion of disability evaluation *if otherwise eligible for referral into the disability system.*" Army Reg. 635-40 ¶ 3-7 (emphasis added). "Soldiers determined medically fit for retention or separation will not be retained past the set release date." Army Reg. 635-200 ¶ 1-24(a)(2).

Here, the physician who initiated the MEB reviewed plaintiff's updated records and determined that he did not have a medical condition precluding separation. Caycedo Decl. ¶ 2(m)-(n). After consultation with the approval authority, the examining physician properly canceled the MEB. *Id.* The Army was not required to continue Coburn's disability processing; in fact, to do so would be contrary to regulations that first require that the examining physician find an MEB to be appropriate. *See* Army Reg. 635-40 ¶ 4-9. Contrary to Coburn's assertions, the regulations do not preclude a physician from terminating an incorrectly initiated MEB that was not based on all the medical evidence. Indeed, it would be illogical if the same physician who has the authority to initiate an MEB does not have the authority to cancel the MEB. Given that there was no violation

of the Army's regulations in the handling of Coburn's MEB, the unusually deferential standard of review applies. Under that standard of review, the ABCMR's decisions must be affirmed.

After gaining additional medical information about Coburn in the intervening months after his initial MEB referral, the examining physician, with approval of his supervisor, found plaintiff fit for separation. Caycedo Decl. ¶ 2(i), (m)-(n). The ABCMR correctly determined in its 2003 decision that plaintiff could not be held past his separation date after the examining physician found plaintiff to be medically fit. AR 38. The ABCMR's 2007 decision noted that termination of the MEB was addressed in its previous decision, and Coburn's VA disability rating—the only new evidence that he introduced in his request for reconsideration—was insufficient to reverse the previous decision. AR 6. These decisions were more than amply supported by the evidence. Plaintiff's medical records simply did not indicate that his disability rose to that defined by Army regulations. *See* AR 38. Moreover, no evidence suggested that Coburn's MEB was unjustly terminated because "[c]ompetent medical authority determined that his medical condition was such that he could be discharged. He has provided no medical evidence to indicate otherwise." *Id.* In short, the ABCMR's decision that the examining physician lawfully terminated the MEB was reasonable, in accordance with Army regulations, and supported by evidence of record. Thus, far more than the required minimal rational connection exists between the facts found regarding the termination of the MEB and the ABCMR's decisions not to reinstate Coburn's physical disability processing. *See Frizelle*, 111 F.3d at 176. Accordingly, the defendant is entitled to

summary judgment on plaintiff's second claim.

## B. Army Regulations 635-40 and 635-200

Coburn's third claim is but a variation on his second. He argues, in essence, that the Army was required to retain him on active duty until his physical disability evaluation processing was completed. Coburn also asserts that if the Army had retained him to complete his disability processing, he would have secured within five days from the date of his separation the "sanctuary" protections of 10 U.S.C. § 1176(a). As explained above, however, the Army's regulations permit, but do not require, medical processing. *See* Army Reg. 635-40 ¶ 4-9; Army Reg. 635-200 ¶ 1-33(c). Although "disposition through medical channels takes precedence over administrative separation processing," such disposition *starts* with the examining physician finding that an MEB is appropriate. Army Reg. 635-200 ¶ 1-33(a). Here, Caycedo determined that the MEB was not appropriate. Caycedo Decl. ¶ 2(m)-(n). The ABCMR found that Caycedo's decision to terminate the MEB was not unlawful. AR 6, 38. That decision was in accordance with Army regulations and supported by evidence of record and thus not arbitrary or capricious, an abuse of discretion, or contrary to law. Therefore, defendant is also entitled to summary judgment on the plaintiff's third claim.

## C. 10 U.S.C. § 1552 and Army Regulation 15-185

Plaintiff's final claim is that the ABCMR's decision-making process does not comply with applicable law. The essence of his claim is that "[t]he ABCMR cannot reasonably or fairly perform its function under 10 U.S.C. § 1552 and [Army Regulation] 15-185 by devoting an average of 3.75 minutes to each application." Compl. ¶ 133. For

support, Coburn provides self-generated statistics that are wholly disconnected from his own applications. As such, he has presented no evidence as to how much time the ABCMR spent deliberating his applications.

Regardless, the issue in this Court's review of the ABCMR is not how much time it spent on his applications but whether all Army regulations were followed. In both decisions, the ABCMR followed Army regulations. It reviewed plaintiff's contentions, the evidence submitted, his military personnel records, the available medical records, and the relevant Army regulations. *See* Army Reg. 15-185 ¶¶ 1-8, 2-2. The ABCMR provided a detailed explanation of its reasons for denying both applications. Coburn has not provided any evidence that the ABCMR's decisions were unsupported by the record. Rather, a review of the administrative record reveals that the ABCMR's decisions were rational, lawful, and supported by substantial evidence. Accordingly, defendant is also entitled to summary judgment on plaintiff's fourth and final claim.

## CONCLUSION

For all of the foregoing reasons, defendant's Motion to Dismiss or in the Alternative, for Summary Judgment is GRANTED, and plaintiff's Cross-Motion for Summary Judgment is DENIED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge