## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRENT M. COBURN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Case No. 09-01266 (RJL)** |
| ) | |
| **JOHN McHUGH,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**FILED**

DEC 30 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### MEMORANDUM OPINION

(December 30, 2014) [Dkt. ##32, 37]

Plaintiff Trent M. Coburn ("plaintiff" or "Coburn") brought this action against

John M. McHugh ("Secretary"),[1] in his official capacity as Secretary of the Army,

pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, on July 7,

2009,[2] seeking judicial review of final decisions of the Army Board for the Correction of

Military Records ("ABCMR") denying plaintiff's applications to correct his military

records to show that he retired from the U.S. Army. *See* Am. Compl. ¶ 1. Now before

the Court are the parties' cross-motions for summary judgment. *See* Pl.'s Mot. Summ. J.

[Dkt. #32]; Def.'s Cross-Mot. Summ. J. [Dkt. #37]. Upon consideration of the parties'

pleadings, relevant law, and the entire record in this case, the Court GRANTS

---

[1] Plaintiff originally named Pete Geren—in his official capacity as Secretary of the Army—as the defendant in this case. *See* Compl. [Dkt. #1]. However, on September 21, 2009, John M. McHugh assumed office as the 21st United States Secretary of the Army, replacing Secretary Geren. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), Secretary McHugh shall be, and hereby is, substituted for Pete Geren as the named defendant in this action. *See* Fed. R. Civ. P. 25(d).

[2] Plaintiff filed an Amended Complaint on September 3, 2009. *See* Am. Compl. [Dkt. #4].

defendant's Cross-Motion for Summary Judgment and DENIES plaintiff's Motion for
Summary Judgment.

## BACKGROUND

Plaintiff enlisted in the Army on November 6, 1984.  *See* Am. Compl. ¶ 16;
Administrative Record ("AR") at 311 [Dkt. #7].  On March 24, 2000, an Article 15 non-
judicial punishment hearing was convened, charging plaintiff with violating Article 112a
of the Uniform Code of Military Justice ("UCMJ").  *See* Plaintiff's Memorandum of Law
in Support of his Motion for Summary Judgment ("Pl.'s Mem.") at 7 [Dkt. #32-1]; AR
84-85.  The charge was based on a positive drug test in early 2000, indicating that
plaintiff had used marijuana.  *See* Am. Compl. ¶ 1; AR 136-139.  Plaintiff pled not-guilty
to the charge, but was nonetheless found guilty by his commanding officer.  *See* Pl.'s
Mem. at 7-8; AR at 84-85.

On August 20, 2000, plaintiff was issued a negative non-commissioned officer
evaluation report ("NCOER") based upon the failed urinalysis and the subsequent Article
15 finding of guilt.  *See* Pl.'s Mem. at 8; AR at 86.  As a result, the Army ordered
plaintiff to undergo an administrative discharge board to determine whether he would be
allowed to remain in the Army.  *See* Pl.'s Mem. at 8; AR at 88.  The administrative
discharge board found that "the allegation that [plaintiff] wrongfully used marijuana
[was] not supported by a preponderance of the evidence," and recommended that plaintiff
"be retained in the [Army]."  AR at 88.

Based on the administrative discharge board's findings and recommendations,
plaintiff sought to have the Article 15 charge set aside.  *See* AR 89-95.  Plaintiff's

attempts, however, were unsuccessful.  On April 20, 2001, the Army informed plaintiff that—based on the Article 15 charge and the August 20, 2000 NCOER—he had been selected for denial of continued Army service under the Qualitative Management Program ("QMP"), pursuant to Army regulation 635-200, Chapter 19.  *See* Pl.'s Mem. at 9; AR at 97-99.

In June 2002, plaintiff was given an updated permanent physical profile listing plaintiff's various ailments and initiating a Medical Evaluation Board ("MEB").  *See* Pl.'s Mem at 9; AR at 338.  MEBs are employed "to document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status."  *See* Army Reg. 635-40, Ch. 4-10.  MEBs rely in substantial part on a narrative summary or "NARSUM" detailing the "history of the Soldier's illness, objective findings on examination" and the "subjective conclusions" of the treating professionals.  *See* Army Reg. 635-40, Ch. 4-11. Although plaintiff was referred to an MEB, the record does not indicate that a NARSUM was ever completed.  *See* Supplemental Administrative Record ("AR2") at 871[Dkt. #45].  Nor does the record indicate that an MEB was formally empaneled. AR2 at 872.

Plaintiff underwent an MEB medical examination on July 8, 2002.  *See* Pl.'s Mem. at 10; AR 353-59.  On the same day that orders were published directing plaintiff's discharge from the Army, plaintiff's treating physician—Dr. Caycedo—examined plaintiff's medical records and the results of his most recent clinical visits with Dr. Schirner,  Dr. Caycedo's supervisor, and decided to terminate plaintiff's MEB processing.  *See* Pl.'s Mem. at 11; AR at 65; Declaration of Doctor (Major) Mario Caycedo ("Caycedo Decl.") ¶ 2 (1-m) [Dkt. #6-4].  On October 30, 2002, plaintiff was

involuntarily separated from the Army under the QMP. *See* Am. Compl. ¶ 1; Pl.'s Mem.

at 12; AR at 36, 38.

Plaintiff has petitioned the ABCMR on three separate occasions since his

separation from the Army. *See* AR at 72-83; *id.* at 33-39; *id.* at 4-20. The ABCMR

denied all three of plaintiff's applications. *See* AR at 71-79; *id.* at 33-39; *id.* at 1-7.

Plaintiff filed this action on July 7, 2009, seeking review of the ABCMR denials. *See*

Compl. On September 29, 2010, I granted summary judgment in favor of defendant and

dismissed the case. *See* Memorandum Opinion and Order [Dkt. ##20, 21]. Plaintiff

appealed the judgment to our Court of Appeals on October 19, 2010. *See* Notice of

Appeal [Dkt. #22]. On May 25, 2012, our Circuit Court affirmed in part, and vacated in

part, this Court's September 29, 2010 decision, and ordered the case remanded to the

ABCMR for further proceedings consistent with its opinion. *See Coburn v. McHugh*, 679

F.3d 924 (D.C. Cir. 2012). The Court of Appeals directed the ABCMR to address certain

specific questions on remand.[3] *See id.* at 935. On June 25, 2013, the ABCMR rendered

---

[3] Specifically, the D.C. Circuit ordered the ABCMR to answer the following questions:
(1) Is a medical evaluation and referral to a MEB under Army Regulation 635-40
¶ 4-9 separate and distinct from an evaluation and action taken by a MEB under
Army Regulation 635-40 ¶ 4-10? (2) Is it possible for a physician to "initiate a
MEB" without necessarily "referring" a case to a MEB? If so, what supports this
conclusion? To what extent do initiation and referral overlap with the concept of
"physical disability processing"? (3) Was [plaintiff's] case referred to a MEB, or
did Dr. Caycedo mean something else when he wrote "MEB initiated"? (4) If
[plaintiff's] case was *not* referred to a MEB, what in the record and regulations
supports this conclusion? If [plaintiff's] case was not referred to a MEB, on what
authority did Dr. Caycedo and Dr. Schirneract when they "abruptly terminated"
the MEB? (5) If [plaintiff's] case *was* referred to a MEB, on what authority did
Dr. Caycedo and Dr. Schirner act when they "abruptly terminated" the MEB? In
other words, how could Dr. Caycedo and Dr. Schirner terminate [plaintiff's] MEB
when they were not members of the MEB?

its decision on remand.[4]  *See* AR2 at 959-71.  The parties then moved to complete briefing on their cross-motions for summary judgment before this Court, which became ripe on August 27, 2014.  *See* Pl.'s Mot. Summ. J.; Def.'s Cross-Mot. Summ. J.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When evaluating cross motions for summary judgment, "the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  *GCI Health Care Ctrs., Inc. v. Thompson*, 209 F. Supp. 2d 63, 67-68 (D.D.C. 2002) (citations omitted).  The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

---

*Coburn*, 679 F.3d at 935.

[4] The ABCMR obtained two advisory opinions directly addressing the questions posed by our Court of Appeals from the two agencies within the Department of the Army—the U.S. Army Physical Disability Agency ("USAPDA") and the Office of the Surgeon General ("OTSC")— that are responsible for establishing, implementing, and interpreting policies on disability processing and retention of soldiers on active duty.  *See* Army Regulation 635-40, Physical Evaluation for Retention, Retirement, or Separation, ¶¶ Ch. 2-4, 2-5 [Dkt. #32-2].  Plaintiff challenged the advisory opinions, however, on December 18, 2013, the ABCMR rejected plaintiff's arguments and denied his application for the correction of his military records.  *See* AR2 at 854-55.

When reviewing the decision of an administrative body pursuant to the APA, the reviewing court generally will not resolve factual disputes, but instead reviews the decision as an appellate court addressing issues of law. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996); *Atlantic Sea Island Grp. LLC v. Connaughton*, 592 F. Supp. 2d 1, 12-13 (RWR) (D.D.C. 2008). The APA permits a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001).

An agency action is arbitrary and capricious if the agency has failed to follow procedures required by law or if it has entirely failed to consider an important aspect of the issue. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Kisser v. Cisneros*, 14 F.3d 615, 618-19 (D.C. Cir. 1994) ("We may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." (quoting *Citizens to Pres. Overton Park Inc. v. Volpe*, 401 U.S. 402, 415 (1971))). At a minimum, that standard requires the agency to consider relevant data and articulate an explanation from which "[its] path may reasonably be discerned," even if the explanation itself is not "a model of analytic precision." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)). Thus, a reviewing court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *MD Pharm., Inc. v. Drug Enforcement*

6

*Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at

43).  In short, the agency's decision is "entitled to a presumption of regularity."

*Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (RMC) (D.D.C. 2009) (quoting *Overton*

*Park*, 401 U.S. at 415).

When reviewing a decision of the ABCMR, courts must employ "an 'unusually

deferential application of the 'arbitrary or capricious' standard' of the [APA]."  *Cone v.*

*Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis v. Sec'y of the Air Force*, 866

F.2d 1508, 1514 (D.C. Cir. 1989)).[5]  An ABCMR decision thus cannot be considered

arbitrary or capricious if it "minimally contain[s] a rational connection between the facts

found and the choice made."  *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)

(citation and internal quotation marks omitted).  For a plaintiff to overcome the strong

presumption that the military administrators discharged their duties lawfully and in good

faith, he must show "by cogent and clearly convincing evidence" that the ABCMR's

decision was the result of an injustice, or material legal error.  *Epstein v. Geren*, 539 F.

Supp. 2d 267, 275 (D.D.C. 2008); *see Doyle v. England*, 193 F. Supp. 2d 202, 207

(D.D.C. 2002) ("In the absence of clear and persuasive evidence to the contrary, the

courts should . . . presume that the Secretary and selection boards performed fairly and

lawfully.").  For the following reasons, plaintiff did not sustain his burden here.

---

[5] *See also Escobedo*, 602 F. Supp. 2d at 248-49 ("Military boards are entitled to even greater
deference than civilian administrative agencies," and this deference "is calculated to ensure that
the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings,
a result that would destabilize military command and take the judiciary far afield of its areas of
competence." (citations and internal quotation marks omitted)).

## ANALYSIS

### I.   Army Regulations Regarding Termination of the MEB

Plaintiff argues that defendant improperly terminated his MEB.  *See* Pl.'s Mem. at

21-26.  I disagree.  It is incumbent on this Court to defer to an agency's interpretation of

its regulations "unless it is plainly wrong."  *Fontana v. Caldera*, 160 F. Supp. 2d 122,

129 (D.D.C. 2001) (quoting *Gen. Carbon Co. v. OSHRC*, 860 F.2d 479, 483 (D.C. Cir.

1988)).  To prevail, the agency's interpretation of its regulations "need not be the only

possible reading" as long as it does not directly contradict the regulations.  *Decker v. Nw.*

*Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (citation omitted).

The Secretary of the Army is empowered to make determinations regarding the

fitness for duty of members of the Army and to "prescribe regulations" in furtherance of

this obligation.  10 U.S.C. § 1216.  The Army accordingly promulgated regulations

governing the procedures for evaluating the fitness of its members, including the

procedures for convening and terminating MEBs.  *See* Army Reg. 635-40; Army Reg.

40-400; Army Reg. 40-501.  Although plaintiff disputes the Army's interpretation of

these regulations, it is clear that the ABCMR hewed to its regulatory program.  The

ABCMR obtained advisory opinions from the USAPDA and the OTSG regarding the

authority of Army physicians to terminate MEBs, both of which bolstered its stance that

such action is permissible.  The USAPDA, which defined an MEB as an informal board

comprised of "two physicians who are chosen after the exam and narrative summary is

completed," opined that "[p]hysician[]s who initiate an MEB based upon their medical

opinion have the same authority to withdraw that initiation when their medical opinions

change." *See* AR2 at 1051. The OTSG likewise concluded that Army physicians could terminate PDES processing if, "prior to convening the MEB, the physicians determine that a Soldier's condition has stabilized." AR2 at 970. Using these advisory opinions as the fulcrum of its analysis, the ABCMR determined that because a NARSUM was never completed, and physicians never empanelled, that an MEB never formally convened. AR2 at 872, 968. The ABCMR next determined, consistent with the USAPDA's guidance, that Dr. Caycedo, as the physician that initiated the MEB, properly withdrew his referral after concluding that plaintiff's medical condition had stabilized. *See* AR2 at 871. Because Dr. Schirner, the physician responsible for administering the MEB, concurred with Dr. Caycedo, it was well within his power to terminate the MEB process. AR2 at 968-69. Nothing in the regulations prohibits such termination, a fact that plaintiff freely, and fatally, acknowledges. *See* Pl.'s Mem. at 25.

Because the ABCMR has evinced a reasonable interpretation of its own regulations, an interpretation that plaintiff has not shown to be clearly erroneous, this Court will defer to the ABCMR's decision allowing Army physicians to terminate plaintiff's MEB.

## II.    The ABCMR's Decision

Plaintiff further claims that the ABCMR's decision was arbitrary, capricious, and unsupported by substantial evidence. *See* Pl.'s Mem. at 39. Unfortunately for plaintiff, I disagree. How so?

The ABCMR may, at its discretion, correct military records when it finds error or injustice. However, the ABCMR found neither here, and clearly explained its reasoning

for concluding that plaintiff was not entitled to the relief sought. While the Court must determine whether the ABCMR considered all of the relevant evidence before it, the Court may not "serve as a super correction board that reweighs the evidence," nor may it substitute its own judgment for that of the agency. *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998). Put simply, a plaintiff's disagreement with the ABCMR's decision is not a valid basis for this Court to set aside an agency action supported by the record.

The record is replete with evidence that plaintiff's condition was stable while his MEB was pending. Plaintiff underwent exhaustive medical evaluations performed by numerous physicians, all of which led to the same inexorable conclusion: plaintiff's condition was not deteriorating. *See* AR2 988-91. Plaintiff's rheumatology evaluations yielded no issues, AR at 336-337, his chest x-rays showed "no evidence of pulmonary disease," AR at 343, and his back MRIs revealed no change in his degenerative disk disorder. *See* AR at 334-335, 340, 341. Indeed, Dr. Caycedo opined based on his own lengthy examinations that plaintiff "was able to perform his duties." AR2 at 990.

The ABCMR's decision reflects a thorough examination of this data and provides an appropriate explanation for its conclusion that plaintiff did not suffer from an unfitting condition. In rendering its decision, the ABCMR considered not only the concurring opinions of Doctors Caycedo and Schirner, but also the reams of medical evaluations militating in favor of plaintiff's fitness. *See* AR2 at 856-74. The ABCMR also reviewed the plaintiff's NCOER, indicating that he "passed his Army Physical Fitness Test in three of the four reports" and "received ratings of 'Excellent,' 'Success,' 'Among the Best,' and 'Fully Capable'." AR2 at 865. The ABCMR reasonably concluded based on the

totality of the record, that plaintiff did not warrant further processing under the Army

PDES.  AR2 at 874.  Accordingly, plaintiff has not demonstrated through "cogent and

clearly convincing evidence[,] that the agency's findings were arbitrary, capricious,

unsupported by substantial evidence, or contrary to law or regulations." *See Epstein*, 539

F. Supp. 2d at 275.  If the Court finds, and I do, that the agency considered relevant data

and articulated an explanation from which "[its] path may be reasonably discerned," this

Court's inquiry is terminated and the ABCMR's decision must stand.  *See Motor Vehicle*

*Mfrs. Ass'n*, 463 U.S. at 43.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Cross-Motion for

Summary Judgment and DENIES plaintiff's Motion for Summary Judgment.  An Order

consistent with this decision accompanies this Memorandum Opinion.


RICHARD J. LEON
United States District Judge